[Civ. No. 25520. Second Dist., Div. Three. June 16, 1961.]

JACK YONCHAR, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

John E. Glover for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

NOURSE, J. pro tem.*—Pursuant to the provisions of section 999a of the Penal Code, petitioner seeks writ of prohibition to prevent the respondent court from proceeding with the trial on four out of five counts of an information filed against him. The basis of his contention as to each count is that all of the evidence relating to those counts was procured by the People through an unreasonable search and seizure.

By count I of the information, petitioner is charged with performing an abortion upon one Snow, by count II he was charged with abortion upon one LeMonds, by count III he was charged with abortion upon one Alberti, by count IV an abortion upon one Zeiger and by count V with an abortion upon one Roos.

Pursuant to section 995 of the Penal Code, petitioner moved the respondent court to dismiss the first four counts of the indictment. He made no attack upon the fifth count. His motions having been denied he filed his petition here. We have reached the conclusion that a peremptory writ of prohibition must issue.

Following are the undisputed facts: One Galindo, a police officer in the city of Los Angeles, assigned to investigations of abortions, was advised by one Beckett that he had taken one Roos (the abortee named in the fifth count) to petitioner; that he paid petitioner $350 and that petitioner had performed an abortion upon Roos who afterwards became ill and was hospitalized. He was likewise so advised by Roos. Beckett and Roos also advised Galindo that petitioner's wife had made some notations containing the names of both Beckett and Roos on a small piece of paper 2 or 3 or 4 inches "in some shape or another." The officer also found in the police records information indicating that an anonymous phone call had been received by the police stating that the anonymous caller's girl friend had been aborted by petitioner and that that girl friend had been in turn referred by another girl who had been aborted by him. Galindo with other officers then went to petitioner's office where they placed petitioner under arrest charging him with abortion.

They asked petitioner where he kept his records regarding any patients that he had treated. Petitioner said that his files were contained in a separate office immediately in front of the consultation office and that he had no objection if Galindo (the arresting officer who testified at the preliminary) had a conversation with his accountant in the file section of the

---

*Assigned by Chairman of Judicial Council.

office building. He also said that Beckett had been harrassing him about some money he wanted returned to him and stated that he would go to the police in the event petitioner did not give him $500; that Beckett was dissatisfied because of the treatment that had been given to his girl friend Roos. He stated that he had treated for her hemorrhaging by giving her a shot of prostigmin. He stated that he did not have any records of Roos because she was an emergency case. Galindo then went to the office building and had the accountant search for a medical history of Roos. None was found.

In the meantime another of the arresting officers had been searching petitioner's office. In the bottom drawer of a desk or cabinet he found a small brown box in which there were some index cards. As he thumbed through these cards he found a card which bore the following inscription: "Roos, Britt 1-4-61 Beckett." He noted that the box also contained four other cards, each of which bore the name of a female and her address and telephone number and in two cases the last name of some other person. The officers had no knowledge whatsoever of these other persons or what their relationship to petitioner had been. They seized the box and all of the cards. They contacted each of the females named on the other four cards and from them received information as to abortions performed upon them by petitioner. Galindo testified that he took the entire box of cards because it appeared to him that all of the cards were written in approximately the same handwriting and in the same form as the card relating to Roos and Beckett.

There is no doubt, and the district attorney frankly admits, that all of the evidence received at the preliminary hearing against petitioner as to the four counts here attacked, was the result of the seizure of these cards.

 Petitioner does not question the lawfulness of his arrest and there is no doubt that the arresting officer had the right to make a reasonable search of the place where petitioner was arrested in an attempt to find evidence of the crime (the abortion upon Roos) for which they had placed petitioner under arrest, but they had no right to seize defendant's records which had no bearing upon the crime for which he was arrested and which he had a lawful right to maintain. Not only were the records so seized inadmissible in evidence against petitioner, but also any evidence gained by the police through investigations based solely upon the information contained in those records. (*People* v. *Schaum-*

*loffel,* 53 Cal.2d 96 at 101-103 [346 P.2d 393] ; *People* v. *Mills,* 148 Cal.App.2d 392 [306 P.2d 1005].)

The alternative writ of prohibition is discharged. Let a peremptory writ of prohibition issue commanding the respondent court to take no further proceedings against the petitioner on counts I, II, III and IV of the information filed in that certain action entitled "The People of the State of California, Plaintiff, versus Jack Yonchar, Defendant" being action Number 240930 in said court.

Shinn, P. J., and Vallée, J., concurred.