FILES, P. J.
Defendant was charged by information with three felonies: Count I, armed robbery (Pen. Code, § 211) ; count II, assault with intent to murder Raymond Bash (Pen. Code, § 217); count III, assault with intent to murder William Watson (Pen. Code, § 217). On March 12, 1963, defendant pleaded guilty to counts I and III. On April 8, 1963, the court permitted defendant to change his plea to not guilty on all counts. The request of defendant’s attorney to be relieved was granted. Thereafter, represented by the public defender, defendant waived a jury trial and on June 17 and 18, 1963, was tried by the court sitting without a jury. The court found defendant guilty as charged in counts I and III, and not guilty on count II. On July 8, 1963, defendant was sentenced to state prison.
On July 17, 1963, a notice of appeal was filed, bearing the signature of an attorney other than the public defender. No brief was filed on behalf of defendant and, after notice to this new attorney of record, pursuant to rule 17(a) of the California Rules of Court, the appeal was dismissed.
On July 20, 1966, upon defendant’s application, the Supreme Court ordered the Court of Appeal to recall its remittitur, vacate the dismissal and reinstate the appeal.
Since that time an attorney has been appointed to represent *627 defendant and the case has been fully briefed by counsel for both sides. Defendant has also filed a brief in propria persona.
A summary of the evidence is as follows: Raymond Bash, a messenger for “Brinks Armored Car,” testified that on December 17, 1962, at about 10:05 a.m. he entered the office of the Southern California Gas Company on South Central Avenue carrying a small grip, in which were two bundles, each containing 25 new one-dollar bills, and $147 in coins. Earlier that day Bash had removed three of the new bills to be used as Christmas presents and replaced them with old bills from his pocket.
As Bash entered the gas company office defendant, who was seated there, arose, pointed a gun at Bash and demanded the grip. Defendant then took the grip and took a gun which Bash carried, ran outside and drove away in a Ford automobile.
James Brown, an employee of the gas company, testified that he saw the holdup and he identified defendant as the robber.
William A. Watson, a retired police officer, testified that he happened to be outside the gas company office when defendant ran out carrying the black grip. When defendant drove away Watson followed in his car. Defendant drove to an address on Wadsworth Street, where he abandoned the Ford, jumped into a parked truck and drove away in it. Before he entered the truck defendant pointed his weapon at Watson and fired five shots. Two shots struck Watson’s automobile, but he was not injured.
Bash’s gun was found in the Ford which defendant had abandoned.
Defendant was arrested between 11 and 11:15 that morning at the traffic court building on South Wall Street. A search of his person at that time disclosed that he was carrying 47 new one-dollar bills, bearing serial numbers in sequence, excepting three numbers which were missing from the series. The three bills which Bash had removed from the package and retained earlier that morning bore the three missing numbers in that series.[1]
*628 The officer who booked defendant testified that when he asked defendant if this money had been taken in the robbery, defendant remained mute.
Defendant testified that he had been at the traffic court building from 9 a.m. until the time of his arrest. He denied any participation in any robbery or assault. He testified that the money he carried had been given to him by his brother between 7 and 8 that morning.
A woman who lived with defendant as his wife testified that defendant had been with her at the traffic court building from 9 o ’clock until he was arrested.
Another witness, who said he was acquainted with defendant, testified that defendant had been at the traffic court commencing sometime before 10 o ’clock.
Defendant’s brother testified that he had given $50 in currency to defendant between 7 and 8 a.m., but he could not remember the denominations, nor could he remember whether the bills were new or old.
On cross-examination of defendant, the district attorney elicited the fact that defendant had pleaded guilty. On redirect, defendant testified that the reason was that his attorney had told him he could make a deal to have another pending case dismissed if he pleaded guilty to this one, and that his family and his attorney had urged him to do so in order to avoid the risk of consecutive sentences. He explained that he had never considered himself guilty in fact of the offenses to which he had pled guilty.
Upon examination of the record, and after considering the contentions made by defendant and his attorney, the court is satisfied that the case was fairly tried, in conformity with the applicable law as it existed at that time. However, two changes in law, as laid down in decisions of our Supreme Court since the trial, must be considered:
1. On July 14, 1964, the Supreme Court decided in People v. Quinn, 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705], that a withdrawn plea of guilty is not admissible in evidence. Earlier decisions of the appellate courts allowing the use of such evidence were disapproved. It has been held that, since the Quinn rule is new law, a defendant is entitled to invoke it upon an appeal which was pending at the time of the Quinn decision even though he failed to object to the evidence in the trial court. (People v. Dykes, 243 Cal.App.2d 572, 575 [52 Cal.Rptr. 537].)
2. In 1965 Griffin v. California, 380 U. S. 609 [14 L.Ed.2d *629 106, 85 S.Ct. 1229], decided that it was improper to draw an inference from a defendant’s refusal to testify in court. In the light of that decision, the California Supreme Court decided in People v. Cockrell (1965) 63 Cal.2d 659, 670 [47 Cal.Rptr. 788, 408 P.2d 116], that the silence of a defendant in the face of accusatory police interrogation is no longer admissible evidence.
The Attorney General calls attention to People v. Rivers, 66 Cal.2d 1000 [59 Cal.Rptr. 851, 429 P.2d 171], in which the Supreme Court held that the new rules regarding police interrogation, first announced in Escobedo v. Illinois (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and People v. Dorado (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], need not be given retrospective application in an appeal which had been dismissed prior to Escobedo and Dorado, and reinstated afterwards. It is urged that the new Quinn and Cockrell doctrines should likewise be denied retrospective application to this reinstated appeal. It is not necessary to reach that question here, because an examination of the record at bench demonstrates that defendant was not prejudiced by any evidence which would be inadmissible under the new rules.
It is important to observe first that this ease was tried and decided by a judge, whereas Quinn involved a jury trial. The fact that a defendant has once pleaded guilty is known to the trial judge almost inevitably even though no mention of it is made during the trial. In this case it happens that the judge who tried the merits was not the judge before whom defendant pleaded guilty and later withdrew his plea. Nevertheless the earlier proceedings were recorded in the minutes, where the new judge was likely to see them as he reviewed the file in preparation for the trial.
With respect to the silence of the defendant when the officer sought to question him, judges are well aware that such refusal to answer has never been evidence of guilt if the refusal is placed expressly upon constitutional grounds. (People v. Corona, 238 Cal.App.2d 914, 919 [48 Cal.Rptr. 193].) Judges are also aware that some who choose to stand on the right to silence overlook the importance of stating their legal ground for refusing to answer. The refusal of a suspect to talk to a policeman was not necessarily of any evidentiary weight, even before the more recent exclusionary rules were adopted.
The People had a strong case based upon the testi *630 mony of three eyewitnesses who had adequate opportunity to observe and who had no apparent motive to fabricate. But the People’s case stands on something far more solid than mere human observation. Defendant, when apprehended about an hour after the robbery, was carrying 47 new dollar bills. This was the exact number taken in the robbery. "What is more, defendant’s bills were a part of a perfect sequence of 50 serial numbers, a sequence which was completed by the three bills from the series which the victim had retained in his pocket. With this evidence, no one could doubt that these were bills taken in the robbery, and that the People’s witnesses were correct in identifying defendant as the robber.
Upon this record the court has no hesitation in saying that there is no reasonable possibility that a retrial, using the present rules of admissibility of evidence, would result in a different finding. Beyond a reasonable doubt, the evidence of the withdrawn plea and the evidence of defendant’s refusal to talk to the police made no difference in the result.
Two points which defendant personally argues in his separate brief will be mentioned briefljL
First: It is not true that the federal law renders invalid any state prosecution for a robbery involving funds insured by the Federal Deposit Insurance Corporation. There is no evidence in this record that the funds were so insured. But the point is without merit in any event, for, in the absence of a showing that defendant has already been convicted or acquitted in a federal, court for this offense, the State of California may prosecute and punish. (People v. Candelaria, 139 Cal.App.2d 432, 436 [294 P.2d 120].)
Second: Defendant claims he is entitled to a new trial on the ground that his trial attorney was ineffective (within the meaning of People v. Ibarra, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]) in that he failed to challenge the legality of defendant’s arrest and object to the introduction of the evidence produced by the search incident to that arrest.
The decision whether to litigate that issue is one peculiarly for the trial attorney to make. An appellate court is in no position to second-guess. (See People v. Garrison, 246 Cal.App.2d 343, 350, 356 [54 Cal.Rptr. 731].) If a defense attorney objects upon the ground that the prosecution has not shown probable cause for the arrest, the prosecutor then is required to produce evidence of what the police had learned about the defendant prior to the arrest. That evidence may include hearsay which would otherwise be inadmissible. A *631 wise defense attorney, who believes the People can prove probable cause if challenged, may very well decide he does not want that issue tried.
In the case at bench the record shows that the truck which the defendant drove had been rented from a local rental agency. The record shows that the police went directly to that rental agency after receiving a report of the robbery. What the officers learned there is not disclosed. There is no reason to doubt that the People were prepared to prove how they located and identified defendant so quickly, if an objection had made that kind of evidence material. There is nothing in this record to indicate that the trial attorney was incompetent or ineffective.
The order denying the motion for a new trial not being appealable, the attempted appeal therefrom is dismissed. The judgment is affirmed.
Jefferson, J., and Kingsley, J., concurred.
A petition for a rehearing was denied Novembr 21, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 17, 1968.

Defendant was carrying bills with serial numbers G65608626A through G65608647A and G65608651A through G65608675A. Bash had retained the bills with numbers ending in 48, 49 and 50. Evidently serial numbers ending in 26 through 50 had been originally in one package, and 51 through 75 in the other.