[Crim. No. 13051. Second Dist., Div. One. Dec. 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSE ANTONIO BATISTA, Defendant and Appellant.

Michael G. Steiniger, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of possession for sale of heroin (§ 11500.5, Health & Saf. Code) and possession of marijuana (§ 11530, Health & Saf. Code) ; he appeals from the judgment.

Officer Burke assigned to narcotic detail had information from three separate confidential informants that one Cano, driving a green and white 1956 Buick, was making deliveries

of heroin around 8th and Magnolia. On April 5, 1965, he and Officers Northrup and Walker saw a green and white 1956 Buick parked one block west of the area in front of an apartment house on Westmoreland; it was registered to one Batista on Albany Street. He supplied the manager with a description of the person for whom he was looking, and it proved to be that of the person living in apartment 107; he then determined that the person who drove the Buick lived there. Shortly thereafter, the officer saw defendant and one Torres walk out of the apartment house and start to get into the Buick; he and Sergeant Walker approached defendant, identified themselves and asked his name. The officer asked if he had any narcotics on his person; defendant said he did not. Officer Burke then asked if he "could check him out" and defendant said, "Yes, go ahead"; he had defendant raise his hands and walk 25 feet away, patted him down and felt an object in his sweater pocket; he pulled the pocket open, saw inside a white paper bindle and removed it. The bindle contained heroin. Defendant was placed under arrest.

After advising defendant of his constitutional rights, Officer Burke asked how much narcotic was in the package and defendant answered, "About a spoon"; asked if there was any more back in the apartment defendant answered, "Yes, I have about two pieces in the apartment. . . . You can go get it [if] you want to and I will take you there"; asked where it was, defendant said, "It is behind an ironing board cabinet in the kitchen." They went to the apartment and opened the door with the key taken from defendant. In the kitchen defendant removed from behind an ironing board a plastic bag in which were 17 balloons containing heroin, a small quantity of marijuana, a package of zigzag wheat straw papers, a handkerchief, a "hype outfit" and a plastic vial containing 5 scored tablets. Officer Burke, an expert in the manner and means of sale of narcotics in Los Angeles County, was of the opinion that the narcotics were packaged for the purpose of sale.

Defendant testified that as he walked to his car, he heard a commotion behind and two persons approached him; one held him and the other took a white bindle from his sweater pocket saying, "I got it"; he did not hear the words, "Police officer" or anything, and no one said he wanted to talk with him; the officer did not ask what the bindle was or if it was his, did not open it or look at it and did not show it to him. He and Torres were handcuffed with their hands behind their backs and walked around the corner to a church; all the keys in his

416

pocket were removed by an officer who did not ask his permission and said nothing; they asked if they were keys to his apartment and he replied they were; Officer Burke said, "Let's go," and took them to his apartment; no one asked for permission or consent to enter; the apartment was already opened and the landlady and two officers were inside; the officer asked him where the rest of the "stuff" was and he showed it to them in the kitchen behind the ironing board. He told them that the balloons contained heroin and were his; actually, they were not his but he took the blame.

■ Appellant claims that the critical issue, a factual one, is his "alleged consent" to the search; he concedes that if consent was given and it was voluntary, the evidence was properly admitted. Recognizing that we will not resolve any conflict arising from the testimony, he urges a rejection of the trial court's finding as based on testimony inherently improbable; that Officer Burke's testimony is a complete fabrication because it is "most improbable" that a person knowingly carrying heroin in his pocket would casually consent to a search, it is "incredible and fantastic" that thereafter he would lead the officer to additional narcotics in his apartment, and the officer's statement that he opened the door with the key "taken from" him is inconsistent with his testimony concerning his voluntary consent. ■ "The applicable rule has been thus stated, ' "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] " ' (*People* v. *Lyons,* 47 Cal.2d 311, 319-320 [303 P.2d 329]; *People* v. *White,* 43 Cal.2d 740, 747-748 [278 P.2d 9].)" (*People* v. *Perez,* 65 Cal.2d 709, 712 [56 Cal.Rptr. 312, 423 P.2d 240].) As said in *People* v. *Haydon,* 18 Cal.App. 543, 555-556 [123 P. 1102, 1108], "A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se,* must involve, we

think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do.'' (See also *People* v. *Collier*, 111 Cal.App. 215, 226 [295 P. 898]; *People* v. *Nunley*, 194 Cal.App.2d 233, 236 [14 Cal.Rptr. 874]; *People* v. *Guerrero*, 207 Cal.App.2d 400, 403 [24 Cal.Rptr. 553].)

 The argument that no right thinking person would have acted to his own detriment in the manner described by Officer Burke is unsound. At the time defendant was approached by the officers he could not know what or how much they knew of his narcotics activities. First he denies having any narcotics; when asked by the officer if he could ''check him out,'' in all probability he then realized that he could no longer avoid arrest for he knew he had narcotics on him with no apparent defense or means of escape. Such action is not unusual and is often motivated by the hope of incurring the police officer's goodwill and obtaining clemency. The Attorney General has pointed out but a few of the cases in which one voluntarily provided law enforcement officers with evidence clearly leading to his arrest and conviction. (*People* v. *Robinson*, 149 Cal. App.2d 282, 284-285 [308 P.2d 461]; *People* v. *Smith*, 141 Cal. App.2d 399, 401 [296 P.2d 913]; *People* v. *Davis*, 48 Cal.2d 241, 248 [309 P.2d 1]; *People* v. *Michael*, 45 Cal.2d 751, 752 [290 P.2d 852].) Moreover, appellant's claim that it is ''incredible and fantastic'' that he would tell the officers that he had more narcotics in his apartment and where they were, ignores his own testimony that when he was in the apartment and asked by the officers ''where the rest of the stuff'' was, ''I showed to him where it was . . . In the kitchen. . . .Behind the—you know, those—board like you press clothes.'' Officer Burke's use of the phrase ''taken from'' the defendant in describing the key he used to open the apartment is no contradiction of his testimony of defendant's voluntary consent to being ''checked out'' and to going to his apartment to search for narcotics. If the key was ''taken'' from defendant prior to his arrest and at the same time the bindle of heroin was removed from his pocket, we may presume in support of the trial court's ruling that it was ''taken'' in the same manner and under the same circumstances as the bindle of heroin—with defendant's consent; if it was ''taken'' from defendant's person after his arrest, it was removed from defendant's person as the result of a proper search. In any event, how the key was ''taken'' from defendant is immaterial in the light of

Officer Burke's testimony that defendant told him that he had narcotics in his apartment, he could go get it if he wanted to and he would take him there, and his further testimony that in the kitchen of the apartment defendant went to the place where the heroin was hidden and removed it for the officers.

■ Totally invalid is appellant's complaint that the trial court failed to rule on the issue of consent. When the cause was submitted on the transcript of the testimony taken at the preliminary hearing, defense counsel stated to the court, "there will only be one issue, but it's got to be developed. That is, the issue of probable cause for the arrest and subsequent search of the defendant"; further, he stated that he would "call the defendant in his own behalf on the basis of the issue involved." Defendant's testimony related almost entirely to his lack of permission—to remove the heroin from his pocket, to take his keys, to enter his apartment and to search it. After all of the evidence was in, defense counsel objected to the offer of the exhibit (envelope containing narcotics) in evidence. Thereafter he argued at length the issue of the legality of the arrest, search and seizure, and at the conclusion, referring to defendant's testimony, he said, "Now, I don't believe that can be a consensual search on the basis of the Haven case." (*People* v. *Haven*, 59 Cal.2d 713 [31 Cal. Rptr. 47, 381 P.2d 927], relates to the issue of consent to search.) After further argument the court again read the preliminary transcript and ruled, "The exhibit will be received. I am satisfied with the evidence." The issue of consent was raised and directly brought to the trial court's attention; thus, implicit in the ruling admitting the exhibit in evidence is the court's finding adverse to defendant on all issues raised by him.

■ The common complaint of inadequate representation in the trial court is here without merit. While he argues that the conduct of trial counsel indicates a complete misunderstanding of the crucial issue (consent) in his case, that he should have argued the validity of the search and that he failed to urge the inherent improbability of Officer Burke's testimony, establish a coerced consent and conduct even a minimal cross-examination of the officer, the burden of establishing inadequate representation " 'not as a matter of speculation but as a demonstrable reality,' " is on appellant. (*People* v. *Reeves*, 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) ■ Defendant had the same counsel at the preliminary hearing as at the trial; counsel was of defendant's

own choice. While he did not cross-examine Officer Burke at length, it may have been his judgment at that time from information in his possession that further attack could lead only to more damaging evidence on cross-examination or re-direct examination or even through a rebuttal witness. Such strategy did not reduce the trial to a "farce or a sham," the test used to determine whether counsel's representation was ineffective. (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457]; *People* v. *Robillard,* 55 Cal.2d 88, 96-98 [10 Cal. Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Hughes,* 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Brooks,* 64 Cal.2d 130, 139 [48 Cal.Rptr. 879, 410 P.2d 383].) ▮ In the heat of the trial defense counsel is best able to determine proper tactics in the light of the evidence offered. Except in rare cases an appellate court should not attempt to second guess trial counsel. (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].) A substantial defense was offered by his own testimony, and appellant's claim that his counsel failed to argue the issue of consent is not borne out by the record; the fact is that it was considered by the trial judge who resolved the issue against him. Appellant has failed to point to any conduct of trial counsel that "cost [him] a crucial defense. (*People* v. *Nicolaus,* *(Cal.) 48 Cal.Rptr. 353, 409 P.2d 193; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) " (*In re Kelly,* 242 Cal.App.2d 115, 123 [51 Cal.Rptr. 148].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

---

*A rehearing was granted on March 2, 1968. The subsequent opinion of the court is reported in 65 Cal.2d 866 [56 Cal.Rptr. 635, 423 P.2d 787].