[Crim. No. 4991.   Third Dist.   Mar. 17, 1969.]

THE PEOPLE, Plaintiff and Appellant, v. FRANKLIN ROGERS et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Appellant.

E. Richard Walker, Public Defender, for Defendants and Respondents.

REGAN, J.—This is an appeal taken by the People from the order of the Yolo County Superior Court suppressing certain evidence pursuant to Penal Code section 1538.5 and its subsequent order dismissing the information under Penal Code section 1385.

On January 30, 1968, Sergeant John Huber of the Davis Police Department obtained the issuance of a complaint against Franklin Rogers. The complaint charged Rogers in two counts with the sale of marijuana on November 30, 1967, and December 21, 1967, respectively. A warrant for Rogers' arrest on these charges was obtained on January 30, 1968. The complaint was based upon information Huber had received from Eric Schalansky, a narcotic agent for the Bureau of

Narcotic Enforcement, State of California, and Dewey Baird, a reserve officer for the Davis Police Department.

The members of the Davis police force who participated in the arrest of Rogers and subsequent search of his apartment were Sergeant Seigler, Officers Brown and Burton, and Mr. Ross, a deputy district attorney for Yolo County. Both Brown and Ross had knowledge of the sales upon which the warrant was founded.

At 8 p.m. on January 30 the law enforcement personnel of Davis (including Sergeant Huber) and other jurisdictions met at the Davis Police Department. The purpose of this meeting was to coordinate the arrests of certain individuals in Davis and West Sacramento to be made on that particular evening.

After the meeting Officer Brown left in search of Rogers, and located him in a nearby pool hall. Brown notified Burton, who was parked nearby, and they observed Rogers leave the pool hall, get into his car and drive away. They saw Rogers enter a bookstore and depart therefrom shortly thereafter. The officers had an opportunity to arrest Rogers either at the pool hall or the bookstore. They did not do so, however, for the officers felt they needed more "cover" for their personal safety. They based their opinion upon their experience and knowledge that the clientele of both establishments were "hippie-types" who would frustrate an arrest attempt, and the reputation of Rogers for having a short temper and possessing tendencies toward violence.

After Rogers left the bookstore the officers lost him. Officer Brown returned to the police station and obtained the warrant for Rogers' arrest. About forty minutes later, the officers located his car parked at his apartment. Sergeant Seigler was notified and he arrived with Mr. Ross at about 10 p.m.

Officer Burton went to the rear of the apartment; Brown knocked at the front door. The door was opened by either Lee or Ribbs (codefendants below). Brown knew Rogers and saw him standing in his bedroom. Being then in possession of the warrant of arrest, he entered the apartment and arrested Rogers. Brown was followed into the apartment by Sergeant Seigler and Ross.

Brown advised Rogers of his rights and began a search of the room. The officers had no search warrant, nor did they receive any consent. During the search Officer Brown found a match box containing marijuana on the top of the dresser.[1]

---

[1] At the hearing on the motion to suppress it was stipulated that the items listed on page 2 of the reporter's transcript were in fact found

As Brown continued his search, Seigler went to the living room to identify the other persons in the apartment. He asked Lee for his driver's license to confirm identity. Lee was unable to produce any identification; he went into his bedroom, presumably to get some. Sergeant Seigler followed Lee and with the aid of a flashlight observed in a cardboard trash box on the floor a plastic bag which contained a substance appearing to be marijuana. Seigler then advised Lee and Riggs of their rights and proceeded to search the bedroom. During the course of this search, Ribbs objected. However, both Brown and Seigler pressed their search of the apartment and found other items of contraband.

The Attorney General in his brief delineates the items found, place where found, and officer discovering such item. This list is substantially accurate and, with slight modification, is incorporated herein:

*Item No. 1.* Match box containing marijuana in plastic bag. Found by Officer Brown in the Rogers bedroom on dresser against south wall.

*Item No. 2.* Plastic bag containing marijuana debris. Found by Officer Seigler in the Lee-Ribbs bedroom in a cardboard trashbox on the floor near a dresser.

*Item No. 3.* Marijuana cigarette. Found by Officer Seigler in the Lee-Ribbs bedroom on dresser or desk near the trash box and located in a small filter or manifold cover apparently belonging to Lee.

*Item No. 4.* Plastic bag containing several hundred marijuana seeds. Found by Officer Seigler in the Lee-Ribbs bedroom in the drawer of a dresser apparently belonging to Lee.

*Item No. 5.* Alligator clip crutch with a leather thong which was stained. Found by Officer Seigler in the Lee-Ribbs bedroom in the top drawer of a desk.

*Item No. 6(a).* Plastic bag containing an alligator clip crutch.

*Item No. 6(b).* Plastic bag containing marijuana debris. Both Item No. 6(a) and No. 6(b) were found by Officer Seigler in right front pocket of Ribbs' trousers when he conducted a search of Ribbs' person in the Lee-Ribbs bedroom.

*Item No. 7.* Three marijuana cigarettes. Found by Officer

in the apartment and that each item so listed contained marijuana. However, as the Attorney General points out, there was no attempt made to link up these listed items with those referred to in the clerk's transcript (i.e., testimony at preliminary hearing).

Seigler in the Lee-Ribbs bedroom in Ribbs' black pea coat pocket and contained in a black case.

*Item No. 8.* Plastic bag containing an estimated ⅓ lid. Found by Officer Brown in the Lee-Ribbs bedroom in a switch box.

*Item No. 9.* Marlboro hardpack cigarette package containing one marijuana cigarette. Found by Officer Brown in the living room on the coffee table in front of the sofa.

*Item No. 10.* Marijuana debris in two syringes with needles attached. Found by Officer Brown in the living room in foot locker apparently belonging to Ribbs.

*Item No. 11.* One marijuana seed. Found by Officer Seigler in kitchen on top of a cabinet in a tobacco pouch along with an empty plastic bag.

The trial court in its memorandum decision held that the search of the apartment was ''an exploratory quest for narcotics,'' and that '' [a]n arrest may not be used as a pretext to conduct a general search of a residence for incriminating evidence.'' In this connection the court notes that the Davis Police Department had at its disposal all of the evidence it needed to make a case on two sales of marijuana, concluding the search was for evidence of *other* crimes, and, accordingly, the court suppressed the evidence and dismissed the action.

The officers' entry was lawful. The validity of the warrant for the arrest of Rogers for the sale of marijuana[2] is not challenged. Also, Officer Brown, who arrested Rogers, had independent knowledge of the two offenses charged in the complaint upon which the warrant of arrest was issued. The search of the apartment after Rogers' arrest was conducted in an attempt to find narcotics. The officers were also aware that sales were reportedly made from Rogers' apartment and that he had sold marijuana in large quantities.

██ Where an arrest is lawful, a reasonable search incidental, thereto is valid (*Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 742-744, 83 S.Ct. 1623] ; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]), and evidence found is admissible even though it relates to a crime different from the one for which the arrest was made. (See *People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal. Rptr. 762, 402 P.2d 834] ; *People* v. *Ghimenti* (1965) 232 Cal.App.2d 76 [42 Cal.Rptr. 504] ; *People* v. *Reed* (1962) 202

---

[2]Rogers subsequently pleaded guilty to this charge and was placed on probation.

Cal.App.2d 575 [20 Cal.Rptr. 911].) ▉ In order to be incident to an arrest a search must be limited to the premises where the arrest is made, have a definite object, and be reasonable in scope. (*People* v. *Cockrell, supra,* 63 Cal.2d at p. 667; *People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) As a general rule, however, general exploratory searches for the purpose of uncovering evidence of crime are unreasonable and therefore within the constitutional ban. (See *Silverthorne Lbr. Co.* v. *United States* (1919) 251 U.S. 385 [64 L.Ed. 319, 40 S.Ct. 182, 24 A.L.R. 1426]; *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 606 [21 Cal. Rptr. 552, 371 P.2d 288]; *People* v. *Mills* (1957) 148 Cal.App. 2d 392 [306 P.2d 1005].) In the end result, the criterion of a search's legality is its reasonableness. (*People* v. *Chapman* (1968) 261 Cal.App.2d 149, 169-170 [67 Cal.Rptr. 601].)

. Respondents contend the arrest was a mere pretext to search for a crime wholly unrelated to the purpose of the arrest arguing that even a lawful arrest cannot justify such a search, citing *People* v. *Schaumloffel* (1959) 53 Cal.2d 96 [346 P.2d 393]; *People* v. *Baca* (1967) 254 Cal.App.2d 428 [62 Cal.Rptr. 182]; and *People* v. *Mills, supra,* 148 Cal.App.2d 392.

The Attorney General, however, contends, and we agree, that the above cited cases are distinguishable. *Baca* dealt with the arrest of a person charged as a fugitive and thus there were no conceivable circumstances under which the arresting officers could expect to find any evidence of the crime charged by a search of the accused's home. *Schaumloffel* and *Mills* (neither of which involved marijuana or narcotics) do not preclude the search for and seizure of contraband which could be used as evidence at the trial of the charge on which the accused is arrested. (See *People* v. *Gallup* (1967) 253 Cal. App.2d 922 [61 Cal.Rptr. 709]; *Yonchar* v. *Superior Court* (1961) 193 Cal.App.2d 135, 137 [14 Cal.Rptr. 93].)

The Attorney General urges that the search and seizure were lawful for three reasons: (1) Knowledge of the narcotic character of the substance, which was the subject of the two sales, could be proved by introducing into evidence at the trial on the sale charges marijuana found in the possession of the accused on a later date (see *People* v. *Bean* (1957) 149 Cal.App.2d 299, 303 [308 P.2d 27]); (2) to prove a common scheme or design at such trial (*People* v. *Ballard* (1956) 145 Cal.App.2d 94, 98-99 [302 P.2d 89]); and (3) to show absence of entrapment at the trial on the sales charge (*People* v. *Tawney* (1959) 168 Cal.App.2d 599, 617 [336 P.2d 659]).

The Attorney General cites *People* v. *Winston* (1956) 46 Cal.2d 151 [293 P.2d 40], for further support. In *Winston*, defendant was charged on four counts: Counts one and two related to his alleged furnishing of marijuana to two minor girls on January 2, 1954; count three related to his furnishing marijuana to one of the girls on March 13, 1954, and count four related to possession of marijuana on September 1, 1954 (the date he was arrested by officers, armed with an arrest warrant, in his apartment). The search incident to the arrest was held to be lawful. The officers found three partially smoked marijuana cigarettes in the kitchen under a table scarf on top of the bread box. We believe that the holding in *Winston* supports the validity and reasonableness of the search in the instant case.

We also note the holding in *People* v. *Gallup, supra,* 253 Cal.App.2d at pp. 927-928, where the court, in commenting on *Schaumloffel* and *Mills,* states:

"The characteristic feature of *Schaumloffel* and *Mills* is that in each case it was held that the sole motive of the search was the discovery of evidence of other crimes. . . .

". . . . . . . . . . . . . . . .

"Neither *Schaumloffel* nor *Mills* involved search which was, in part at least, motivated by a desire to find evidence material to the crime for which the arrest is made. . . ."

■ We hold that under the totality of circumstances in the present case the search of Rogers' apartment was incident to the lawful arrest of Rogers, it being contemporaneous therewith and limited to the premises where the arrest was made. The search was definite in its object, namely, to discover narcotics, and was reasonable in its scope. (*People* v. *Cockrell, supra,* 63 Cal.2d at pp. 666-667.)

■ The search of the Lee-Ribbs bedroom was also lawful. Respondents Lee and Ribbs were co-occupants of the apartment with Rogers. The apartment was one distinct unit occupied by the three respondents, the unlocked bedrooms being an integral part of the same living quarters. Where the arrest is lawful, a reasonable search incidental thereto and limited to the premises where the arrest is made and, as here, with a definite object, is a proper search and contraband so discovered is admissible in evidence. (See *People* v. *Gorg* (1958) 157 Cal.App.2d 515, 522-523 [321 P.2d 143].)

The order of the trial court is reversed.

Friedman, Acting P. J., and Janes, J., concurred.