[Crim. No. 4527. Fourth Dist., Div. Two. Apr. 19, 1971.]

In re ARTHUR JOSEPH GOLIA on Habeas Corpus.

## COUNSEL

James G. Cassidy, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Respondent.

## OPINION

**KAUFMAN, J.**—On August 10, 1967 petitioner (hereinafter defendant) was convicted by jury of grand theft (Pen. Code, § 484), armed robbery (Pen. Code, § 211), and kidnaping for the purpose of committing robbery (Pen. Code, § 209), all arising out of a robbery perpetrated in a Denny's Restaurant in the City of Riverside on December 11, 1966. On August 31, 1967, judgment was pronounced and defendant was sentenced to state prison for the term prescribed by law on each count, sentences to run

concurrently. Defendant's appeal from the judgment of conviction is now pending in this court. (4 Crim. 3168.)

On September 28, 1970, defendant mailed to this court a petition for writ of habeas corpus. It appearing therefrom that defendant was then incarcerated at San Quentin, out of the territorial jurisdiction of this court, the petition was returned to defendant without filing. On November 30, 1970, defendant filed a petition in the California Supreme Court for mandate, prohibition or other appropriate relief. The California Supreme Court treated the petition as one for habeas corpus and by order dated December 17, 1970, transferred the same to this court "for consideration in conjunction with the appeal pending in *People* v. *Golia*, 4 Crim. 3168." (Golia v. McDowell, L.A. No. 29828.) On January 25, 1971, this court appointed James Cassidy, Esq., attorney at law of Riverside, California to represent defendant on this proceeding and issued an order to show cause.

## Contentions

Defendant's principal contention is that he was denied effective assistance of counsel at trial. He also suggests that he is being denied effective assistance of counsel on appeal.

## Facts

In order to understand defendant's contentions it is necessary to state some of the facts.

On December 11, 1966, Denny's Restaurant in the City of Riverside and several of its employees were the subjects of an armed robbery. The robber was carrying an automatic pistol and wore a blue ski mask trimmed in red over his face for the purpose of concealing his identity. He had on a checkered shirt and was wearing boots greenish in color. It turned out that one Gary Carl Rogers, employed at the restaurant as the cook and present at the time of the robbery, was an accomplice to the crime.

Because the robber's face was covered by the ski mask, none of those present at the time of the robbery except Rogers was able to identify the defendant as the robber. Rogers, however, testified for the prosecution and gave detailed testimony that he and defendant planned the robbery and that defendant was the robber wearing the ski mask. Corroborating evidence consisted primarily of two items: (1) introduction into evidence of two ski masks similar in description to that worn by the robber; and (2) testimony of one Jack Ronald Turner of two conversations with defendant

in which defendant made statements that he participated in the Denny's robbery.[1]

The ski masks were introduced into evidence without objection. It is this fact upon which defendant predicates his contention that he was denied effective assistance of counsel at trial. He argues that his trial attorney should have made an attempt to exclude the introduction of the ski masks on the theory that this evidence resulted from defendant's unlawful arrest and an unlawful search of the premises in which he was arrested. The facts concerning the arrest and search and seizure, insofar as they were developed at trial, are as follows.

On May 1, 1967, approximately five months after the robbery at Denny's, defendant was arrested at his residence in the City of Riverside where he lived with his mother and sister. The arresting officers testified that defendant was arrested pursuant to one or more outstanding arrest warrants, which they had seen, although they did not have the warrants in their possession at the time of the arrest. There was no search warrant. Defendant was arrested in an area between the kitchen and the living room in the residence. Incident to this arrest, the officers embarked upon a search for the automatic pistol used in the Denny's robbery and other evidence of the various crimes with which defendant was then charged and for which the arrest warrants had been issued. Having searched with negative results in defendant's bedroom, one of the officers entered defendant's mother's bedroom and saw a brown paper bag sitting on the end of a bed. He opened the bag and discovered therein two revolvers, several items of clothing, two pairs of black leather gloves, a stocking cap with holes in it, a money bag, and two ski masks—both dark in color with red trimming. According to their testimony, these were the things the officers were looking for, and, upon their discovery the search was terminated. By this time, at least a cursory search of the entire house had been made. On cross-examination it was brought out that the search failed to turn up any automatic pistol such as that used in the robbery nor any boots or checkered shirt like those worn by the masked robber.

### Competency of Trial Counsel

█ Defendant contends that incompetency of his trial counsel is demonstrated by counsel's failure to object to the introduction of the ski masks on either of two bases: (1) that defendant's arrest was unlawful;

[1] Turner had been jointly charged with defendant of perpetrating a crime other than the Denny's robbery and had been granted immunity in exchange for his agreement to testify in this case.

and (2) that, even if the arrest was lawful, the search made incident thereto was impermissibly excessive in scope.[2]

■ Defendant's contention that the search was impermissibly excessive in scope is not meritorious. The search in the instant case occurred on May 1, 1967. *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] applies only to searches conducted after June 23, 1969. (*People* v. *Edwards*, 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) The validity of the search in this case, therefore, is governed by the law existing prior to the decision in *Chimel*. ■ Under pre-*Chimel* standards, a search contemporaneous with a valid arrest was proper when limited to the premises where the arrest was made, had a definitive object and was reasonable in its scope. (*People* v. *Cockrell*, 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Cruz*, 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) A search of the entire premises was permissible by pre-*Chimel* standards where the premises, though occupied by a number of persons, constituted a single, integral unit and the search was not exploratory but limited to definite objects such as instrumentalities used in the commission of a crime or fruits of the crime. (*People* v. *Rogers*, 270 Cal.App.2d 705, 710-711 [75 Cal.Rptr. 919]; cf. *Frazzini* v. *Superior Court*, 7 Cal.App.3d 1005, 1013-1014 [87 Cal.Rptr. 32]; *People* v. *Gorg*, 157 Cal.App.2d 515, 523 [321 P.2d 143]; *People* v. *Lawrence*, 149 Cal.App.2d 435, 445-446 [308 P.2d 821].) ■ Defendant's residence in the case at bench appears to have constituted a single, integral living quarter; the officers were searching for definite objects, the automatic pistol and other instrumentalities or fruits of the crimes for which defendant was wanted and had just been arrested; and, when the objects found in the brown paper bag were discovered, the search terminated. The search was not impermissibly excessive in scope under pre-*Chimel* standards.

■ There was no valid basis for objection to the introduction of the

---

[2]In his petition, defendant points not only to trial counsel's failure to object at trial, but also to his failure to move to set aside the information pursuant to Penal Code, section 995 and his failure to make a motion to suppress pursuant to Penal Code, section 1538.5. The failure to make a motion to suppress pursuant to Penal Code, section 1538.5 is readily explained by the fact that that code section was not enacted until 1967 (Stats. 1967, ch. 1537) and did not become effective until November 8, 1967. Defendant was tried in August 1967, more than a month before. With respect to the propriety of a 995 motion, an augmentation of the record (Rules on Appeal, rule 60) to include the docket sheet in Riverside Municipal Court case No. 6707-F discloses that preliminary hearing was waived. In the absence of a preliminary hearing no 995 motion could have been made. In any event, assuming that the accomplice Rogers would have testified at a preliminary hearing as he did at trial, such a motion would have been futile. The uncorroborated testimony of an accomplice is sufficient upon preliminary examination to hold the defendant to answer. (*People* v. *McRae*, 31 Cal. 2d 184, 186-187 [187 P.2d 741].) The testimony of Rogers prima facie established all of the elements of the crime and was itself more than ample to support the information.

ski masks on this ground, and the failure to so object does not demonstrate any inadequacy of representation. (*In re Teran,* 65 Cal.2d 523, 528-529 [55 Cal.Rptr. 259, 421 P.2d 107]; *People* v. *Thomas,* 267 Cal.App.2d 698, 702 [73 Cal.Rptr. 590]; *People* v. *Lyons,* 204 Cal.App.2d 364, 369 [22 Cal.Rptr. 327].)

Defendant's contention that the inadequacy of his representation at trial is demonstrated by his attorney's failure to object to the introduction of the ski masks on the theory that defendant's arrest was unlawful is likewise unmeritorious. The argument is that, when the officers testified that defendant was arrested pursuant to one or more outstanding warrants for his arrest, trial counsel should have examined into the facts underlying the issuance of such warrant or warrants; that such an examination would have disclosed that the only information known to the police concerning defendant's participation in the crimes for which such arrest warrant or warrants had been issued came from the accomplice Rogers and/or Turner, both of whom were at that time themselves charged with crimes; that such informants were not reliable informants; and that the information supplied by them would have been insufficient to support the issuance of the arrest warrant or warrants.

In support of his argument that the arrest warrant or warrants could not have been properly issued solely upon information supplied by Rogers and/or Turner, defendant relies principally upon *Pollock* v. *Superior Court,* 272 Cal.App.2d 548 [77 Cal.Rptr. 565], where it was held without citation of authority that: "The report of a confessed thief who informs after he is in custody is not alone sufficient to constitute reasonable cause for an arrest [without a warrant]." (272 Cal.App.2d at p. 552.) It was also stated without citation of authority that, "the fact that each of the [informants] confessed to his own crimes in addition to implicating the petitioner is not legally sufficient evidence that reliance on their reports was reasonable." (272 Cal.App.2d at p. 554.)

To the extent it may be interpreted as holding that information received from a previously untested accomplice who is himself accused of crime may never constitute probable cause for arrest without a warrant, or by analogy, for issuance of a warrant of arrest, the validity of *Pollock* is doubtful. In the first place, as recognized by *Pollock* itself, the uncorroborated *testimony* of an accomplice is sufficient to establish probable cause to hold a defendant to answer. (*People* v. *McRae, supra,* 31 Cal.2d 184, 186-187; *Pollock* v. *Superior Court, supra,* 272 Cal.App.2d at p. 555.) ■ Secondly, the *affidavit* of an accomplice or participant in the crime may constitute probable cause for the issuance of a search warrant. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 153-154 [81 Cal.Rptr. 613, 460 P.2d 485].) "[T]he

issue is 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' " (*People* v. *Lara,* 67 Cal.2d 365, 375 [62 Cal.Rptr. 586, 432 P.2d 202], quoting *People* v. *Sandoval,* 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, 419 P.2d 187].) The issue is the same when the question is the propriety of the issuance of a warrant, with the exception that it is the magistrate's reasonable reliance that is determinative rather than that of the police officer. (See *People* v. *Sesslin,* 68 Cal.2d 418, 426 [67 Cal.Rptr. 409, 439 P.2d 321]; *Skelton* v. *Superior Court, supra,* 1 Cal.3d at pp. 153-154.) In deference to the preference for determination by a magistrate rather than the hurried determination of a police officer, a reviewing court will accept in support of the magistrate's determination evidence of a less judicially competent or persuasive character than in the case of the determination by a police officer. (*Aguilar* v. *Texas,* 378 U.S. 108, 111 [12 L.Ed.2d 723, 726, 84 S.Ct. 1509, 1512]; *Skelton* v. *Superior Court, supra,* 1 Cal.3d at pp. 149-150.)

While the court in *Skelton* expressly relied on the fact that an affidavit of the informer was presented to the magistrate, the court indicated that information from an accomplice may contain a built-in indication of reliability. If it is a detailed statement of facts rather than just an accusation and if it incriminates the informer himself and thus constitutes a declaration against penal interest, the statement may contain "an internal guaranty of reliability." (*Skelton* v. *Superior Court, supra,* 1 Cal.3d at p. 154, fn. 7; *People* v. *Spriggs,* 60 Cal.2d 868 [36 Cal.Rptr. 841, 389 P.2d 377].)

Moreover, the court in *Pollock* recognized the possibility that information from an informer of unproven reliability can be corroborated by similar information from another untested informer given at a different time and place, although that possibility was held inapplicable to that case because the information there had been received from several informants in the presence of each other at a single interrogation. (*Pollock* v. *Superior Court, supra,* 272 Cal.App.2d at p. 554, and cases there cited.) In the case at bench, even upon the hypothesis stated by defendant, incriminating information could have come from both Rogers and Turner and there is no allegation that such information was obtained at the same time and place in a joint interrogation.

Penal Code section 813 provides: "When a complaint is filed with a magistrate charging a public offense originally triable in the superior court of the county in which he sits, if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he *must issue a warrant for the arrest of the defendant;* . . . . ."

In the absence of any objection, the validity of the arrest was not developed at trial and no arrest warrant was introduced into evidence. In his return to the order to show cause, however, the Attorney General has attached as an exhibit a certified copy of an arrest warrant dated April 3, 1967, issued by the Municipal Court of the Riverside Judicial District commanding defendant's arrest. The warrant provides that it may be served at night and that it is valid for a period of 180 days. It recites: "Complaint under oath having been this day laid before me, that the crime(s) of violation of Section 484 of the Penal Code and Section 209 of the Penal Code has been committed, and accused Defendant ARTHUR JOSEPH GOLIA thereof . . . ."

■ It is true, of course, that the complaint supporting an arrest warrant under Penal Code, section 813 must satisfy the requirements of *Giordenello* v. *United States,* 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245] and *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]. (*People* v. *Sesslin, supra,* 68 Cal.2d at pp. 422-426.) The warrant is regular on its face, however, and recites that it is based on a complaint. Its validity is supported by a presumption of official duty regularly performed. (Evid. Code, § 664; cf. *People* v. *Carson,* 4 Cal.App.3d 782, 786 [84 Cal.Rptr. 699]; *People* v. *Wilson,* 256 Cal.App.2d 411, 417 [64 Cal. Rptr. 172].)

Defendant has not alleged in his petition facts which, if true, would establish the insufficiency of the complaint or complaints under *Aguilar* or *Sesslin* or, as previously explained, even under *Pollock* v. *Superior Court,* the case upon which he relies. He merely speculates that if trial counsel had examined into the matter, the record would disclose that the information of the police came solely from Rogers and Turner and that such information would have been insufficient to support the issuance of the arrest warrant. ■ It is defendant's burden, however, to establish trial counsel's alleged inadequacy " 'not as a matter of speculation but as a demonstrable reality.' " (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal. Rptr. 691, 415 P.2d 35].)

■ Even if defendant's speculations were indulged, however, the inadequacy of his trial attorney would not thereby be demonstrated. Defense counsel was privately retained, rather than appointed. (See *People* v. *Scott,* 263 Cal.App.2d 581, 585 [69 Cal.Rptr. 901]; see also *People* v. *Robillard,* 55 Cal.2d 88, 96 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) A review of the record, including defense counsel's cross-examination of the prosecution witnesses, his examination of defendant, and his argument

to the jury[3] discloses that he was well prepared, that he presented the defense in accordance with a preconceived plan and that his decision not to oppose introduction of the testimony of the officers concerning their search and the items found was a tactical decision made in accordance with the planned defense.

The trial strategy of defense counsel is rather apparent. He was faced with the very damaging testimony of Rogers and Turner. As previously noted, the efficacy of an objection to the introduction of the ski masks on the ground that their discovery resulted from defendant's unlawful arrest was doubtful at best, particularly when it is remembered that this case was tried in 1967 prior to judicial announcement of many of the presently existing sophisticated nuances in the law of search and seizure. Faced with these problems, defense counsel attempted to use the search and its products to defendant's advantage. Without objection he permitted the prosecution to mark all of the items for identification and give testimony concerning their discovery. He was thus enabled to, and did, cross-examine the officers to bring out that, despite their search, they did not find that defendant possessed an automatic pistol of the type used in the robbery nor any boots or checkered shirt such as that worn by the masked robber. When the prosecution sought to introduce the items discovered in the search, defense counsel then successfully objected to all of the items except the ski masks on the ground of irrelevancy. He then elicited from defendant testimony that defendant had received all of these items from Turner and had them in the brown bag preparatory to turning them over to the authorities. When combined with the failure of the police to find the automatic pistol, the boots or the checkered shirt, this was a plausible story from which, if believed, the jury could draw an inference of defendant's innocence. This was the theme of defense counsel's argument to the jury, and he requested and obtained a jury instruction supporting his theory (CALJIC 26: "Evidence Susceptible of Different Constructions").

Our conclusion derived from the record that the decision not to object on search and seizure grounds was a tactical one is further supported by a declaration of trial counsel submitted by the Attorney General in a supplement to his return to the order to show cause in which trial counsel declares: "It was my feeling at that time that as a matter of fact it was beneficial to the defendant to establish that items were found which did in no way tie the defendant into the offense. As a result of the contacts that

---

[3]Pursuant to rule 60 of the Rules on Appeal, we have utilized as a part of the record in this proceeding the entire record in the direct appeal (4 Crim. 3168). In that connection, on our motion, the record in the direct appeal was augmented to include a reporter's supplemental transcript of defense counsel's argument to the jury.

I had with the District Attorney's Office, the arresting Officers etc., and the information I had gathered generally, it was my opinion at that time that the search and seizure problem was not the major problem involved in the defense of the case."

There is no evidence whatever that defense counsel was unfamiliar with the exclusionary rule or any fact pertinent to the defense. ■ The decision whether to litigate the issue of the admissibility of evidence that may have resulted from an unlawful arrest or search is one peculiarly for the trial attorney to make. (*People* v. *Jackson*, 255 Cal.App.2d 629, 634 [63 Cal.Rptr. 301]; *People* v. *Garrison*, 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731].) ■ "In the heat of a trial, defendant's counsel is best able to determine the proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel." (*People* v. *Brooks*, 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Batista*, 257 Cal. App.2d 413, 419 [64 Cal.Rptr. 718].) While it proved unrewarding, counsel's tactical decision not to attack the admissibility of the ski masks, when viewed in context, more nearly suggests a high degree of competency than ineptitude. In any event, his tactical decision will not be second-guessed by this court more than three years after the event.

### Ineffective Assistance of Counsel on Appeal

■ There is some suggestion in defendant's petition that he is being deprived of effective assistance of counsel on appeal. This contention is without substance.

Defendant first complains that appointed counsel on appeal has failed to raise in his brief the issue of ineffective trial counsel. This complaint is completely unfounded. Point IV of the brief filed by appointed counsel on behalf of defendant is directed at the illegality of defendant's arrest and the search of his residence, and Point V specifically contends that defendant was deprived of effective counsel at trial by trial counsel's failure to object to the introduction of the ski masks on this ground. Obviously, counsel on appeal is somewhat limited in his ability to argue the point of defendant's allegedly illegal arrest, inasmuch as, as hereinabove indicated, most of the arguments relating to that issue must necessarily be based upon matters not within the record. It is fundamental that an appellate court in review on direct appeal is limited to a consideration of matter presented by the record. (*People* v. *Merriam*, 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].)

Defendant recognizes this fundamental rule. In fact, it is from his statement of recognition of the rule in his petition that his real complaint about

appellate counsel can be ascertained. He states: "Petitioner has by letter twice informed counsel . . . as to the procedural *impossibility* of obtaining appellate relief as to this contention [ineffective trial counsel] . . . ; moreover, petitioner on both occassions [*sic*] requested his counsel on appeal to file Appendix 'B' hereto [the petition for writ of habeas corpus]." In short, defendant's contention that he is being deprived of the effective assistance of counsel on appeal is based on the premise that it is the duty of appointed counsel on appeal to file an extraordinary writ on defendant's behalf. This premise misconceives the function of appointed counsel on appeal. His duty is to present defendant's case on direct appeal to the best of his ability. We know of no authority and cannot conceive of any holding that counsel appointed to prosecute a direct appeal has a duty to file or to prosecute an extraordinary writ believed to be desirable or appropriate by the defendant. We hold that there is no such duty.

The order to show cause is discharged and the writ denied.

Gardner, P. J., concurred.