[Crim. No. 12326. Second Dist., Div. Four. Sept. 18, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. VIOLA
BACA, Defendant and Appellant.

Frank C. Morales for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edward A. Hinz, Jr., and Anthony S. Dick, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was arrested as a fugitive and for possession of heroin for sale. A preliminary examination

was held; an information was filed accusing defendant of violating 11500.5 of the Health and Safety Code; a motion under Penal Code section 995 was made and denied; defendant pled not guilty. Defendant personally, and all counsel, waived a jury trial and the cause was submitted on the testimony contained in transcripts of the proceedings at the preliminary hearing, together with exhibits there received. Defendant was found guilty; motion for new trial was argued and denied; probation was denied; defendant was sentenced for the term prescribed by law. Defendant appeals.

State Narcotics Agent Manuel Diaz received information from the fugitive detail of the Los Angeles sheriff's office that defendant failed to appear in a superior court trial and that a warrant had been issued for her arrest. Agent Diaz also had personal knowledge that defendant failed to appear and that a bench warrant was issued. He also received information from a woman named Terry Camarado that defendant moved from Stillwell's Motel to a friend's residence at 2707 Pomeroy, apartment number 18.

Sergeant Sanchez and McCarville, together with Agent Diaz, went to the new address, talked to the manager, went to apartment 18, knocked on the door, and heard noises but no answer. The agent got the key from the manager and Sergeant Sanchez and McCarville entered with the key.

Agent Diaz testified as to the circumstances of the ensuing arrest and search as follows: ''I proceeded to the bathroom and behind a door in the bathroom I observed the defendant. I immediately placed the defendant under arrest as a fugitive. I told her to come out from behind the door. I then went behind the door, and on the floor I observed a piece of paper containing numerous white objects. I examined the objects, and they contained 11 condoms, each containing a white powder resembling heroin. I then arrested the defendant for possession of heroin with intent to sell, advised her of her constitutional rights; she had a right to an attorney, a right to remain silent, and anything she said could be used against her, and I asked her if she understood, and she said, 'Yes.' ''

On cross-examination, the officer clarified the sequence of events, as follows:

''Q. Upon gaining entry into the apartment, you say you first observed the defendant in the bathroom? A. Yes.

''Q. You could see her in the bathroom? A. Yes.

''Q. And you asked her to come out of the bathroom? A. Yes.

"Q. She did not come out of the bathroom? A. Pardon?

"Q. She did not come out of the bathooom? A. Yes, she did.

"Q. She did come out of the bathroom? A. Yes.

"Q. And the bathroom exits into what room? A. A bedroom.

"Q. Is that where you placed her under arrest? A. Yes.

"Q. Then you went into the bathroom yourself? A. Yes.

"Q. Then you found the items that you have just described, which are marked for identification as People's 1 collectively? A. Yes."

Defendant raises only two issues:

(1) Defendant asserts that the officers had no reasonable or probable cause to believe defendant was in apartment 18 and therefore the entry and search were unlawful.

(2) Defendant asserts that the search of the bathroom was not incidental to defendant's arrest and that the evidence obtained was a product of an unlawful search and seizure and inadmissible.

Defendant's argument that the search of the bathroom was improper is well taken. When an arrest is lawful, it is proper to make a reasonable search, and evidence found is admissible, even though it relates to a crime that is different from the one for which the arrest is made. (See *People* v. *Reed* (1962) 202 Cal.App.2d 575 [20 Cal.Rptr. 911], and *People* v. *Nebbitt* (1960) 183 Cal.App.2d 452 [7 Cal.Rptr. 8].) In *People* v. *Kraps* (1965) 238 Cal.App.2d 675 [48 Cal.Rptr. 89], it was held that a search which was not connected with an offense stated in an outstanding traffic warrant against defendant did not render illegal the seizure of marijuana from defendant's pocket, since the police are entitled to make a search for weapons. (Also see *People* v. *Stewart* (1961) 189 Cal.App.2d 176 [10 Cal.Rptr. 879].) However, "an exploratory search, using one alleged crime as a subterfuge, is illegal." (Witkin, Cal. Evidence (2d ed. 1966) § 113, p. 112.) In the case of *People* v. *Mills* (1957) 148 Cal.App.2d 392, 398 [306 P.2d 1005], Mills was arrested for violation of the Corporate Securities Act. The officers already had convincing proof of his guilt when they searched and found evidence of other crimes. The appellate court held that a search may be exercised to discover evidence of the particular crime for which the arrest is made but when the bounds of a reasonable search have been exceeded, as where a search is made for evidence of crimes other than the one for which the arrest is

made, the evidence wrongfully seized and its derivative may not be used. In the case at bench defendant was being arrested as a fugitive. It is clear that the search of the bathroom could not have been made for the purpose of providing evidence of guilt of that crime. The officers had no legitimate purpose other than to arrest her as a fugitive and pursuant to the outstanding warrant. Once they had discovered her, and she had come out of the bathroom, their purpose had been fulfilled. There was no need to search further once the object of the search had been found.

 The People correctly argue that the mere looking at that which is in plain sight is not a search. (*People* v. *Fitch* (1961) 189 Cal.App.2d 398 [11 Cal.Rptr. 273]; *People* v. *Hurst* (1960) 183 Cal.App.2d 379, 386 [6 Cal.Rptr. 483].) However, the testimony of Agent Diaz, quoted in detail above, indicates that the narcotics were not, and could not have been, seen until the officer entered the bathroom after defendant had left that room and surrendered. The ''plain sight'' rule has no application on these facts.

Since the judgment must be reversed for that reason, we need not consider defendant's alternative argument that the officers had no reasonable grounds for entering the apartment at all.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied October 3, 1967, and respondent's petition for a hearing by the Supreme Court was denied November 15, 1967. Mosk, J., was of the opinion that the petition should be granted.