[Crim. No. 5866. First Dist., Div. One. Nov. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. FREDERICO ORTEGA VASQUEZ, Defendant and Appellant.

Jay R. Mayhall, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction for possession of marijuana (Health & Saf. Code, § 11530) entered after a trial by the court. Defendant's contentions relate solely to the legality of his arrest and of the subsequent procedures leading to the discovery of marijuana in his home.

The relevant facts are as follows: Police Officer Russell went to defendant's residence to execute warrants for his

arrest on misdemeanor charges.[1] Russell rapped on the door, called out "It's a police officer," and banged on the door several more times without getting a response. He saw someone peering at him from a window, then heard what sounded like someone running toward the back of the house. He ran around to the rear and just as he reached the back door saw defendant starting to come out the door. Russell stepped in the door, took defendant by the arm and stated that he had a warrant for defendant's arrest.

As Russell was explaining the warrants to defendant, he noticed several automobile spotlights lying on the floor inside an open closet. He asked whose spotlights they were and defendant replied that they were his and that he had gotten them while employed at Richardson Chevrolet. Russell then told defendant that he need not answer any more questions and could call an attorney, and added "I would like to search your apartment if it is all right with you." Defendant replied, "Sure." Russell then stated he would need another policeman for assistance and started moving toward the front door. Defendant started to open the back door. Russell said, "No, why don't we go out the front door, my patrol car is parked right in front there and I need to use the radio." After some hesitation defendant acceded. Russell and defendant then proceeded through the front room and bedroom combination to the front door. In the front room area, Russell observed green plants growing in orange crates. In response to Russell's query as to what he was growing defendant stated that they were tomato plants. Russell, however, suspected that they were marijuana plants. At this point Russell again advised defendant that he didn't have to talk to Russell any more, and that he had the right to have an attorney, and that anything defendant might say could be used against him in a court of law.

Russell proceeded to the patrol car where he radioed for assistance and asked the dispatcher to contact Richardson Chevrolet to find out if any spotlights were missing. After Officer McCollum arrived in response to the call for assistance, the police dispatcher reported that no one had been given permission to take any spotlights from Richardson Chevrolet and that keys to the building, power tools, and spotlights were missing. Officer McCollum then asked defendant, "Is it okay to search your house?" and defendant replied "Sure." Defendant was handcuffed and the officers engaged in a

---

[1] These charges were for traffic offenses involving the failure to appear and driving with a restricted or suspended license.

general search of the house which turned up two matchboxes of marijuana seeds. A third officer, Rodman, also joined in the search. After being advised four times of his constitutional rights, defendant admitted that the seeds and plants were marijuana and subsequently executed a written and signed statement at police headquarters.

The only evidence introduced at the trial consisted of defendant's statement and the testimony of Rodman, Russell, and McCollum that they found marijuana in defendant's home. Defendant objected to admitting the officers' testimony on the ground of illegal search.

Defendant contends that Russell failed to comply with the requirements of Penal Code section 841 when he arrested defendant pursuant to the arrest warrant and that such noncompliance invalidated all that followed. Section 841 requires that the arresting officer must inform the person to be arrested of the intention to arrest him, the cause of the arrest, and the authority to make it. Here, although Russell did not formally comply with the requirements of section 841 until after he had stepped over the threshhold of the back door and taken defendant by the arm, he substantially complied with the section when he announced at that time that he had a warrant for defendant's arrest and proceeded to "explain" the warrant contemporaneously with such physical arrest. (See *People* v. *Jablon,* 153 Cal.App.2d 456, 460 [314 P.2d 824].) Moreover, a police officer's reasonable belief that compliance with section 841 would frustrate an arrest excuses strict compliance with that section. (*People* v. *Maddox,* 46 Cal.2d 301, 305-306 [294 P.2d 6] [cert. den. 352 U.S. 858 [1 L.Ed.2d 65, 77 S.Ct. 81]]; see *People* v. *Ruiz,* 196 Cal.App.2d 695, 701-703 [16 Cal.Rptr. 855] [cert. den. 370 U.S. 954 [8 L.Ed.2d 819, 82 S.Ct. 1604]].) In the instant case Russell testified that he believed that defendant was attempting to escape the warrant and that if Russell did not step in and seize defendant he would slam the door in Russell's face and run out the front door. Here Russell's belief was reasonable in view of the facts that defendant failed to respond to the knocking on the front door and the statement "It's a police officer" and that he was heard running toward the back door. Thus, any technical omissions on the part of Russell in arresting defendant were justified by the exigencies of the situation.[2]

[2]Even if we were to hold that the officer did not comply with section 841, such noncompliance does not require the exclusion of evidence seized

■ Although, as we have concluded, the arrest of defendant was lawful, such arrest did not justify a search of defendant's residence as an incident to the arrest without his valid consent. ■ It should be noted, preliminarily, that the scope of permissible police conduct is narrower in misdemeanor than in felony cases. (See *People* v. *Hughes,* 240 Cal.App.2d 615, 619 [49 Cal.Rptr. 767]), and that the burden of justification for a search made without a search warrant is on the prosecution. (*People* v. *Henry,* 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *People* v. *Shelton,* 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665].) ■ In the instant case Russell had no legitimate purpose other than to arrest defendant pursuant to the outstanding misdemeanor traffic warrants. Once this was accomplished his purpose was fulfilled and there was no need to conduct a search of the premises since defendant, the legitimate object of any search pursuant to the warrant of arrest, had been found and arrested. (See *People* v. *Baca,* 254 Cal.App.2d 428, 431 [62 Cal.Rptr. 182]; *People* v. *Henry, supra.*)

The People claim that the record establishes a valid consent on the part of defendant when he replied in the affirmative to Russell's statement at the time of the arrest pursuant to the warrant that Russell would like to search the apartment if it was "all right" with defendant. ■ The question of consent is one of fact for the trial court and must be expressly resolved; the consent must be voluntary and not in response to an express or implied assertion of authority. (*People* v. *Henry, supra,* 65 Cal.2d at p. 846.)[3]

■ In the present case the trial court, however, did not find that defendant consented to any search of the premises, but concluded that the taking of defendant out the front door rather than the back door was not a search at all and that the reentry into the house by the two officers was based on probable cause consisting of Russell's observation of marijuana

in a search incidental to an otherwise lawful arrest. (*People* v. *Maddox, supra,* 46 Cal.2d at p. 305; *People* v. *Hall,* 62 Cal.2d 104, 108 (fn. 5) [41 Cal.Rptr. 284, 396 P.2d 700]; *People* v. *Cove,* 228 Cal.App.2d 466, 472-473 [39 Cal.Rptr. 535].) Here the arrest pursuant to valid warrants was lawful in all other respects.

[3]There is a question, moreover, as to whether valid consent can be found in the absence of proof that a defendant was advised of his constitutional rights pertaining to searches. (See *People* v. *Henry, supra;* 65 Cal.2d at p. 846; *People* v. *Griffin,* 250 Cal.App.2d 545, 549 (fn. 4) [58 Cal.Rptr. 707]; and note the federal rule exemplified by *United States* v. *Nikrasch,* 367 F.2d 740, 744; see also *Miranda* v. *Arizona,* 384 U.S. 436, 475 [16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 10 A.L.R.3d 974], on the analogous question of waiver of Fifth Amendment rights.)

plants in plain view while he was taking defendant out the front door. We agree with this conclusion. It is apparent from the record that Russell's request to search the premises was prompted by the presence of the several spotlights which were in plain view at the time he was explaining the warrants of arrest to defendant, that Russell did not intend to search the premises pursuant to defendant's consent until after he could secure assistance by use of the radio in his patrol car, and that proceeding out the front door was a more convenient and direct route to the car. It was in the course of taking this route that Russell observed the marijuana plants which were in plain sight. The mere looking at that which is in plain sight is not a search. (*People* v. *Hurst*, 183 Cal.App.2d 379, 386 [6 Cal.Rptr. 483]; *People* v. *Fitch*, 189 Cal.App.2d 398, 403 [11 Cal.Rptr. 273]; *People* v. *Baca, supra*, 254 Cal. App.2d at p. 431.)

 Russell testified that upon seeing the plants and being told by defendant that they were tomato plants his suspicions were aroused because he had grown plants and it seemed to him that tomato plants should have been out in the sunlight and not in the dark next to a heater. He testified further that he thought "they were possibly marijuana," and that it was for this reason that he advised defendant of his rights at that time. These circumstances sufficed, we believe, to give Russell probable cause to search the house and form the basis for reasonable cause for the subsequent reentry and search by the officers.

In view of the conclusion we have reached we need not consider whether the observation of the spotlights in defendant's kitchen coupled with the police dispatcher's hearsay report that no one had been given permission to take the spotlights from Richardson Chevrolet justified the subsequent search of the premises; nor need we consider whether defendant's consent to the search after the dispatcher's report was a valid consent.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied December 19, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1968.